An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-578

Filed 5 August 2026

New Hanover County, No. 24CVS004747-640

CAPE FEAR COASTAL AVIATION, LLC, Plaintiff,

v.

AIR WILMINGTON, INC., d/b/a MODERN AVIATION WILMINGTON, Defendant.

Appeal by Plaintiff from Order entered 11 March 2025 by Judge Quintin McGee in New Hanover County Superior Court. Heard in the Court of Appeals 26 February 2026.

> *Reiss & Nutt, PLLC, by W. Cory Reiss, for Plaintiff-Appellant.*
>
> *Equitas Law Partners, LLP, by Thomas S. Babel and Lieth O. Khatib, for Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Cape Fear Coastal Aviation, LLC (Plaintiff) appeals from an Order granting partial summary judgment to Air Wilmington, Inc. (Defendant) on Plaintiff's claim for Declaratory Judgment alleging Defendant's termination of the lease agreement entered into by the parties was invalid and represented a violation of the implied

covenant of good faith and fair dealing. The Record on appeal tends to reflect the following:

Defendant leases office and hangar facilities from the New Hanover County Airport Authority and subleases those spaces to entities operating at the airport. In May 2023, Plaintiff, a flight school, entered into an agreement to lease office and hangar space from Defendant (the Lease Agreement). The Lease Agreement set out a 36-month initial term, automatically renewing as a year-to-year lease. It also included termination provisions for both parties, including allowing Plaintiff to terminate the Lease Agreement upon loss or sale of the aircraft stored at the leased facilities. Importantly for purposes of this case, Subsection 3.2 of the Lease Agreement also provided Defendant could unilaterally terminate the lease:

> 3.2 Operator may terminate this Agreement at any time upon sixty (60) days prior written notice to User.

Plaintiff began operations after entering into the Lease Agreement. As part of its operations, Plaintiff purchased aircraft and operated them out of the hangar space leased from Defendant. Subsequently, in 2024, the parties amended the Lease Agreement to provide for the lease of additional space.

On 5 December 2024, Defendant notified Plaintiff by email that it was terminating the Lease Agreement based on the Section 3.2 termination provision, effective 3 February 2025.

On 19 December 2024, Plaintiff filed a Complaint seeking a declaratory

judgment that Defendant's termination of the lease was invalid. Defendant filed counterclaims for summary ejectment, breach of contract, and trespass.

Defendant filed a Motion for Partial Summary Judgment on Plaintiff's declaratory judgment claim. The trial court orally ruled Defendant's termination of the Lease Agreement was valid. Following the oral ruling, representatives of Defendant changed the locks to the leased facilities and removed Plaintiff's aircraft from hangar spaces. The trial court entered a written Order the next day, 11 March 2025, declaring the lease termination to be valid, denying Plaintiff's motion for preliminary injunction, and denying Plaintiff's request for a continuance to request discovery.

The same day, Plaintiff filed Motions for a temporary restraining order to halt Defendant's self-help ejectment efforts and for leave to file supplemental claims. The trial court denied these Motions on 14 March 2025. On 12 March 2025, Defendant filed a Motion for Summary Judgment on its counterclaims. After hearing this Motion, the trial court granted summary judgment on 21 March 2005 in favor of Plaintiff on Defendant's claim for statutory summary ejectment.

On 26 March 2025, Plaintiff filed Notice of Appeal from the trial court's 11 March 2025 Order.

On 28 May 2025, Defendant moved for leave to amend its counterclaims to include a claim for common law ejectment. The trial court granted the Motion to Amend, overruling Plaintiff's objection that the Notice of Appeal automatically stayed

the trial court action.

On 30 May 2025, Plaintiff filed a Petition for Writ of Supersedeas and Motion for Temporary Stay with this Court. We allowed both, staying the 11 March Order and further proceedings in the trial court pending disposition of this appeal.

## Issues

The issues on appeal are whether: (I) the trial court's 11 March 2025 Order affects a substantial right providing this Court jurisdiction to hear the appeal; (II) Defendant's termination was valid under the express terms of the Lease Agreement; (III) Defendant violated the implied covenant of good faith and fair dealing; and (IV) the trial court erred by denying Plaintiff's Motion to Continue.

## Analysis

I.   Appealability

Plaintiff acknowledges the trial court's 11 March 2025 Order is interlocutory, as Defendant's counterclaims are still pending before the trial court. *Veazey v. City of Durham,* 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."). Generally, there is no right of immediate appeal from interlocutory orders and judgments. *Goldston v. Am. Motors Corp.,* 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an interlocutory order is subject to appellate review if either: (1) the trial court certifies the order under Rule 54(b); or (2) the order deprives

the appellant of a substantial right that would be lost unless immediately reviewed. *Currin & Currin Constr., Inc. v. Lingerfelt,* 158 N.C. App. 711, 713, 582 S.E.2d 321, 323 (2003). Here, the trial court did not certify the order from which Plaintiff appeals, and Plaintiff must therefore establish that "delay of the appeal will jeopardize a substantial right of appellant's and cause an injury that might be averted if the appeal were allowed." *Embler v. Embler,* 143 N.C. App. 162, 165, 545 S.E.2d 259, 262 (2001).

A substantial right is "one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment." *Turner v. Norfolk S. Corp.,* 137 N.C. App. 138, 142, 526 S.E.2d 666, 670 (2000). Plaintiff advances multiple arguments for substantial rights at stake in this appeal. Most relevant among those is the possibility of multiple trials resulting in inconsistent verdicts.

While the avoidance of one trial is not ordinarily a substantial right, the right to avoid the possibility of two trials on the same issues can be. *Green v. Duke Power Co.,* 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982). The possibility of a second trial affects a substantial right when "the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Id.* However, it is not enough to show that the claims in each trial arose out of a single transaction or that "the facts involved in the claims remaining before the trial court may overlap with the facts involved in the claims that have been dismissed." *Hamilton v. Mortg. Info.*

*Servs., Inc.,* 212 N.C. App. 73, 80-81, 711 S.E.2d 185, 191 (2011) (citing *Nguyen v. Taylor,* 200 N.C. App. 387, 393-94, 684 S.E.2d 470, 474-75 (2009)). We "evaluate the specific proof required to litigate each claim in order to determine whether inconsistent verdicts might result in the event that we refrained from considering Plaintiff's appeal on the merits at this time." *Id.*

Here, the trial court's order resolved Plaintiff's claim for declaratory judgment on the question of whether Defendant's termination of the Lease Agreement was valid. Plaintiff argues that, because Defendant's counterclaims for ejectment and holdover damages depend on the validity of the termination, the trial court's determination thus creates the possibility of inconsistent verdicts. We agree.

In *Allen v. Sea Gate Ass'n, Inc.* we held a substantial right was implicated under similar circumstances. 119 N.C. App. 761, 460 S.E.2d 197 (1995). In that case, a group of property owners brought a declaratory judgment action challenging the validity of the dues and assessment provisions of restrictive covenants affecting their properties. *Id.* at 763, 460 S.E.2d at 198-99. The trial court granted partial summary judgment to the homeowners, declaring those provisions void and unenforceable. *Id.* The defendant association's appeal of that order was interlocutory, as its counterclaim for past dues and assessments was still pending. *Id.* However, we held the trial court's order affected a substantial right because the claims resolved in that order all had issues of fact common to the remaining counterclaim. *Id.* Because the counterclaim for dues and assessments depended on the validity of the assessment

provisions, it was possible dismissal of the appeal would result in two trials on the same issues. *Id.* Therefore, the order appealed implicated a substantial right and we addressed the merits of the trial court's partial summary judgment order. *Id. See also J & B Slurry Seal Co. v. Mid-South Aviation, Inc.,* 88 N.C. App. 1, 9, 362 S.E.2d 812, 817 (1987) (substantial right affected where issue on appeal was "fundamental to the disposition" of remaining claims).

Similarly, Defendant's remaining counterclaims, for common law ejectment, trespass, and breach of contract via Plaintiff's alleged holdover tenancy, each depend on the validity of Defendant's termination of the Lease Agreement. Accordingly, dismissal of this appeal could result in two trials on the same issues. This appeal therefore affects a substantial right, and we address the merits.

II.   Express terms of Lease Agreement

Plaintiff argues the trial court erred by determining Defendant's termination of the Lease Agreement was valid and granting partial summary judgment to Defendant on Plaintiff's claim for declaratory judgment. Summary judgment is appropriate when the record shows "there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *In re Will of Jones,* 362 N.C. 569, 573, 669 S.E.2d 572, 573 (2008) (citation omitted). "When considering a motion for summary judgment, the trial judge must view the presented evidence in the light most favorable to the nonmoving party." *Dalton v. Camp,* 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "If there is any question as to the weight

of the evidence summary judgment should be denied." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP,* 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999) (citation omitted). We review a trial court's grant of summary judgment *de novo. Will of Jones,* 362 N.C. at 573, 669 S.E.2d at 576.

The primary question is whether the terms of the Lease Agreement allowed Defendant to unilaterally terminate the contract. Subsection 3.2 of the Lease Agreement provides, in its entirety:

> 3.2  Operator may terminate this Agreement at any time upon sixty (60) days prior written notice to User.

No other provisions limit the scope of this clause. Subsection 3.2 is contained within Section 3 of the Lease, entitled "Term and Termination." The prior subsection, 3.1, provides that the parties agree to an initial lease term of 36 months, and the lease is then automatically renewed on a year-to-year basis unless either party provides sixty days' notice of termination prior to the end of a lease term. The subsequent sections provide additional scenarios under which the parties may terminate the Lease Agreement: 3.3 allows Plaintiff to terminate upon sale or loss of the aircraft it operates out of the leased facilities; 3.4 automatically terminates the Lease Agreement if Defendant's master lease from the airport is terminated; and 3.6 allows Defendant to terminate upon default by Plaintiff, with default defined in subsection 3.5. None of these subsections contain provisions referencing subsection 3.2. Under the plain text of the Lease Agreement, subsection 3.2 operates independently from

the other termination clauses, which each require certain conditions be met to be invoked.

"Where the language of a contract is clear and unambiguous the construction of the agreement is a matter of law." *Hemric v. Groce,* 169 N.C. App. 69, 76, 609 S.E.2d 276, 282 (2005) (citation omitted). An ambiguity exists only if the language of an agreement is "fairly and reasonably susceptible to either of the constructions asserted by the parties." *Bicket v. McLean Sec., Inc,* 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996) (citation omitted). Although the plain text of the termination clause appears unambiguous, Plaintiff argues genuine issues of material fact exist as to its meaning.

First, Plaintiff argues Defendant drafted the Lease Agreement and the terms at issue must therefore be construed against it. *Wood-Hopkins Contracting Co. v. N.C. State Ports Auth.,* 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974) ("It is a rule of contracts that in case of disputed items, the interpretation of the contract will be inclined against the person who drafted it."). However, this rule of construction aids in the interpretation of ambiguous clauses. *Yates v. Brown,* 275 N.C. 634, 641, 170 S.E.2d 477, 482 (1969) ("[A]ny ambiguity in the contract must be resolved, if reasonably possible, by construction favorable to the [nondrafting party]."). The identity of the drafting party does not impact our analysis of whether or not a contract term is ambiguous in the first place.

Plaintiff also argues interpreting Section 3.2 as allowing Defendant the right

to terminate the agreement at will would moot other terms, including the other termination clauses and the 36-month initial lease term. Plaintiff argues if the Lease Agreement grants Defendant the power to unilaterally terminate the agreement, the provision setting out the 36-month initial term is meaningless. We disagree. In general, contract provisions should not be construed as conflicting unless no other reasonable interpretation is possible. *Int'l Paper Co. v. Corporex Constructors, Inc.,* 96 N.C. App. 312, 316, 385 S.E.2d 553, 556 (1989). Here, the terms are not in conflict: a reasonable interpretation is that the Lease Agreement was for an initial 36-months, but Defendant could terminate with 60 days' notice during that term.

The other, conditional termination clauses are likewise not mooted by Section 3.2. Plaintiff argues Section 3.6, which allows Defendant to terminate the Lease Agreement upon default by Plaintiff, is unnecessary if Defendant may unilaterally terminate. However, termination for default under Section 3.6 does not require 60 days' notice to Plaintiff. This provision is not mooted by Section 3.2.

Thus, the terms of the Lease Agreement unambiguously allow Defendant to unilaterally terminate the agreement upon 60 days' notice. Therefore, the trial court did not err in granting partial summary judgment on this basis to Defendant.

III.    Covenant of Good Faith and Fair Dealing

Plaintiff also argues Defendant's termination of the Lease Agreement was invalid because it violated Defendant's duty of good faith and fair dealing. "In addition to its express terms, a contract contains all terms that are necessarily

implied 'to effect the intention of the parties' and which are not in conflict with the express terms." *Maglione v. Aegis Family Health Centers,* 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quoting *Lane v. Scarborough,* 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973)). These implied terms include the "basic principle of contract law that a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." *Weyerhaeuser Co. v. Godwin Building Supply Co.,* 40 N.C. App. 743, 746, 253 S.E.2d 625, 627 (1979). "To state a valid claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged took action which injured the right of the other to receive the benefits of the agreement, thus depriving the other of the fruits of the bargain." *Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.,* 255 N.C. App. 236, 253, 805 S.E.2d 147, 158 (2017) (cleaned up).

Defendant argues a party cannot violate the implied covenant of good faith and fair dealing absent a breach of the express terms of the contract. This argument is based in dicta from our decision in *McDonald v. Bank of N.Y. Mellon Trust Co., Nat'l Ass'n,* 259 N.C. App. 582, 586, 816 S.E.2d 861, 864-65 (2018).[1] However, this

---

[1] "Language in an opinion not necessary to a decision is obiter dictum and later decisions are not bound thereby." *Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.,* 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985). In *McDonald* we held there was no breach of the implied covenant of good faith and fair dealing because the plaintiff did not allege facts showing the defendant was bound by the contract. 259 N.C. App. at 590, 816 S.E.2d at 866. Additionally, we stated "A defendant cannot

characterization of the claim as subsidiary to express breach of contract is at odds with our understanding of implied terms existing "in addition to" the express terms of the contract. *Maglione,* 168 N.C. App. at 56, 607 S.E.2d at 291. For example, in *Jaudon v. Swink,* a seller terminated a listing agreement with his realtor one day prior to entering into a sales contract. 51 N.C. App. 433, 434, 276 S.E.2d 511, 512 (1981). Although the listing agreement had no set term and was therefore terminable at will by either party, there was sufficient evidence to submit to the jury the question of whether the termination of the agreement was in good faith. *Id.* at 435, 276 S.E.2d at 436. We noted in that decision that "good faith" is an "honest intention to abstain from taking unconscientious advantage of another *even through technicalities of law."* *Id.* (citing *Black's Law Dictionary* 822 (4th ed. rev. 1968) (emphasis added)). Likewise, in *Maglione,* evidence that an employer changed its method of calculating an employee's bonuses supported a claim for violation of the implied covenant of good faith and fair dealing even "[a]ssuming, without opinion that the relevant contract

---

breach a covenant of good faith and fair dealing when a claimant fails to establish the defendant breached the underlying contract." *Id.* at 586, 816 S.E.2d at 864-65. This dicta stems from our decision in *Suntrust Bank v. Bryant/Sutphin Props., LLC,* 222 N.C. App. 821, 732 S.E.2d 594 (2012) and misstates the holding of that case. In *Suntrust*, the plaintiff sued for failure to repay a commercial note, and the defendants counterclaimed for breach of the covenant of good faith and fair dealing. The jury in that case determined neither party had breached the contract. The defendants moved for JNOV on breach of the covenant of good faith and fair dealing, which was denied by the trial court, and we affirmed the trial court's denial because "[a]s the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts." 222 N.C. App. at 833, 732 S.E.2d at 603. This is not a general holding that express breach is required for a finding of implied breach in all cases. It represents an analysis that, under the facts of that case, the only way the commercial debtors could have violated the implied covenant of good faith and fair dealing would have been by failing to repay their debt as required by the terms of the note.

was unambiguous such that it is clear defendant can switch the . . . bonus calculation method." 168 N.C. App. at 58, 607 S.E.2d at 292. In other words, it is possible a party may violate the implied covenant of good faith and fair dealing without violating the express terms of the contract.

However, Plaintiff has not shown there is a genuine issue as to any material fact relating to its claim Defendant violated the implied covenant of good faith and fair dealing. As discussed above, the Lease Agreement allowed Defendant to unilaterally terminate at any time upon 60 days' notice. Plaintiff alleges Defendant's termination of the Lease Agreement was intended to retaliate against Plaintiff for perceived poaching of Defendant's employees by a third entity which shared ownership with Plaintiff, and that this violated the implied covenant.

Viewing the evidence in the light most favorable to Plaintiff as the non-moving party and assuming Defendant was motivated as Plaintiff suggests, this does not demonstrate a violation of the implied covenant of good faith and fair dealing: that "a party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." *Maglione,* 168 N.C. App. at 56, 607 S.E.2d at 291. A contract only contains necessary implied terms so long as they "are not in conflict with the express terms." *Id.* The parties entered into a contract creating a lease containing a clause expressly allowing Defendant to terminate the lease upon 60 days' notice. Applying the doctrine as Plaintiff suggests, to foreclose Defendant's ability to invoke the termination clause,

would conflict with the express terms of the Lease Agreement.

Moreover, Defendant's exercise of the termination clause does not conflict with the purpose of the contract. "All parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement." *Maglione,* 168 N.C. App. at 56, 607 S.E.2d at 291. Under its express terms, the purpose of the Lease Agreement was to create a lease for a term of years which Defendant could terminate upon sufficient notice. Invoking the termination clause does not violate that purpose. Indeed, Plaintiff does not cite any authority to support the assertion that Defendant's exercise of its rights under the contract as a result of its displeasure with the alleged, and unrelated, business dealings of a third-party related to Plaintiff constitutes a lack of good faith or fair dealing. Defendant's exercise of the unambiguous termination clause contained in a commercial contract, in accordance with the terms of the clause, does not violate the implied covenant.

IV.    Motion to Continue

Finally, Plaintiff argues the trial court erred by denying its Motion to Continue because it had served written discovery requests on Defendant which were still pending. Under Rule 56(f) of our Rules of Civil Procedure, a trial court may deny a motion for summary judgment or order a continuance in order to permit discovery:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or

> depositions to be taken or discovery to be had or may make
> such other order as is just.

N.C. Gen. Stat. § 1A-1, Rule 56 (2025).

This rule "should be liberally applied to allow sufficient time to complete discovery," but the decision to continue rests in the trial court's discretion. *Fla. Nat'l Bank v. Satterfield,* 90 N.C. App. 105, 109, 367 S.E.2d 358, 361 (1988). "To prevail on a Rule 56(f) motion, the [party seeking the continuance] has the burden of showing why additional discovery is necessary and how that discovery will create a genuine issue of material fact." *Ripellino v. N.C. Sch. Bds. Ass'n,* 158 N.C. App. 423, 426, 581 S.E.2d 88, 91 (2003).

Here, Plaintiff presented an affidavit of its CEO stating:

> Because the facts and circumstances surrounding the termination are the subject of discovery from Modern, [Plaintiff] could not present by affidavit facts essential to justify its opposition on those grounds without discovery.

This statement is insufficient to demonstrate either why discovery is necessary or how that discovery will create a genuine issue of material fact. At issue in this case is an express, unambiguous contractual termination clause. It is unclear how additional discovery could raise genuine issues of material fact as to the validity of that termination or that Defendant's exercise of that clause constituted a violation of the implied covenant of good faith and fair dealing. On these facts, the trial court did not abuse its discretion by denying Plaintiff's Motion to Continue.

Thus, there were no genuine issues of material fact precluding entry of partial

summary judgment, and the trial court did not abuse its discretion in denying Plaintiff's Motion to Continue. Therefore, partial summary judgment was proper. Consequently, the trial court did not err in entering its 11 March 2025 Order.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's 11 March 2025 Order.

AFFIRMED.

Judge WOOD concurs.

Judge MURRY concurs in the result only.

Report per Rule 30(e).